UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                             :
HOUSING ADVOCATES, INC.,                     :
                                             :          CASE NO. 1:10-CV-0790
            Plaintiff,                       :
                                             :
    v.                                       :          OPINION & ORDER
                                             :          [Resolving Doc. Nos. 27, 28, 29]
BERARDI & PARTNERS, INC. et al.,             :
                                             :
            Defendants.                      :
                                             :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Defendants Berardi and Partners, Catholic Charities, Donley Construction, and Thorson,
Baker, and Associates separately move for summary judgment in this fair housing disability
discrimination case.  For the following reasons, this Court **DENIES** the Defendants' motions for
summary judgment.

### I.  Background

      Plaintiff Housing Advocates operates as a nonprofit fair housing organization to combat
barriers to equal housing opportunities throughout Ohio.  As part of its efforts to identify such
barriers, Housing Advocates examines building permits and blueprints for potential fair housing
violations.  Through reviewing blueprints for and conducting a physical inspection of Emerald
Village, a multi-family housing complex in North Olmstead, Ohio, the Plaintiff identified several
design and construction features that it claims violates the Fair Housing Act, 42 U.S.C. § 3604(f),

Case No. 1:10-CV-0790
Gwin, J.

and the Ohio Fair Housing Law, O.R.C. § 4112.02(H)(22). In particular, the Plaintiff located failures

to design, construct, or modify bathrooms, kitchens, common areas, and thermostats to meet fair

housing accessibility requirements for persons with disabilities. [Doc. 1-1; Doc. 34-2.]

Housing Advocates then filed a complaint against the Defendants for their alleged

contributions to the identified violations.  The complaint named Defendant Catholic Charities, a

Cleveland nonprofit corporation, which had contracted with Defendant Berardi, an architecture and

engineering firm, and Defendant Donley Construction, to design and construct Emerald Village.  The

complaint also named Defendant Thorson, which had contracted with general contractor Donley to

provide civil and structural engineering services for Emerald Village. [Doc. 28 at 5.]

All Defendants challenge the Plaintiff's standing to bring claims under the Ohio Fair Housing

Law, arguing that the state statute does not grant standing to private fair housing organizations such

as Housing Advocates. [Doc. 27 at 14-17; Doc. 28 at 7; Doc. 29-1 at 15.] In addition, all Defendants

claim that the Plaintiff failed to file its complaint within the relevant statutes of limitations provided

by the federal and Ohio fair housing statutes.  The Defendants say that because Housing Advocates

filed its complaint more than two years after the last Certificate of Occupancy issued for Emerald

Village, the Plaintiff's claims are time-barred by the federal two-year and Ohio one-year statutes of

limitations. [Doc. 27; Doc. 28 at 7; Doc. 29-1.]

Finally, Defendant Thorson, Baker, and Associates argues that the Plaintiff's claims do not

implicate Thorson, which as a structural and civil engineering firm was not involved in the design

or construction of Emerald Village. [Doc. 28.] However, in its summary judgment reply brief to this

Court, Thorson has withdrawn its arguments on this point.  Accordingly, the Court will not consider

summary judgment on these grounds and will limit its analysis to the organizational standing and

Case No. 1:10-CV-0790
Gwin, J.

statute of limitations issues.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted). The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id*.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one

Case No. 1:10-CV-0790
Gwin, J.

party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

*A. Organizational Standing Under O.R.C. § 4112.051*

      Courts have consistently held that the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* permits organizational standing where, as here, [Doc. 1-1 at 5], a defendant's alleged fair housing violation purportedly leads the plaintiff organization to commit resources to efforts aimed at terminating the alleged violations. *Fair Housing Council v. Village of Olde St. Andrews*, No. 05-5862, 2006 WL 3724128, at *470, *474 (6th Cir. Dec. 15, 2006) (unpublished) (citing *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998) ("In deciding organizational standing questions after *Havens*, appellate courts have generally agreed that where an organization alleges or is able to show—depending on the stage of the proceeding—that it has devoted additional resources to some areas of its effort in order to counteract discrimination, the organization has met the Article III standing requirement.")); *see generally Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

      In relevant part, the Act provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . .." 42 U.S.C. § 3613(a)(1)(A). The Act further defines "aggrieved person" to include "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). These sections, in conjunction with the Act's definition of "person" to include individuals and organizations, permit

-4-

Case No. 1:10-CV-0790
Gwin, J.

groups like the Plaintiff to file private civil actions under the Act.  42 U.S.C. § 3602(d).

The Defendants say, however, that Ohio Fair Housing Law does not similarly permit organizational standing because it provides no such definition of "aggrieved person." The Defendants point to the Ohio Court of Appeals opinion in *Fair Housing Advocates v. Chance*, No. 07CA0016, 2008 WL 2229530, at *1 (Ohio Ct. App. June 2, 2008), to argue that advocacy groups such as Housing Advocates do not qualify as "aggrieved persons" under Ohio fair housing laws and that divesting or committing resources to combat fair housing violations does not, under Ohio law, constitute an "injury in fact." [Doc. 27 at 15-16; Doc. 29-1 at 18.]

In *Chance*, the court of appeals found that the Ohio Fair Housing Law limits civil enforcement of fair housing practices to "aggrieved persons" but that the law failed to define "aggrieved persons." Because the Ohio legislature could have defined this term or adopted the broad federal definition of "aggrieved person," but did not, the *Chance* court determined that the plaintiff fair housing organization could not demonstrate standing under the law.  *Chance*, 2008 WL 2229530, at *3.  The court also noted that federal fair housing laws explicitly provide for enforcement by "private fair housing enforcement organizations" where the Ohio Fair Housing Law did not.  The court suggested that had Ohio law defined "aggrieved persons" as broadly as federal law, to include any "person" (further defined to include organizations) claiming injury by a discriminatory housing practice, an organizational plaintiff might have had standing.  *Id.*  The Defendants therefore correctly argue that under the *Chance* holding alone, plaintiff groups such as Housing Advocates do not qualify as aggrieved persons and thus lack standing under the Ohio Fair Housing Law.

Yet the Defendants do not discuss the *current* language of the Ohio Fair Housing Law, which

-5-

Case No. 1:10-CV-0790
Gwin, J.

Ohio House Bill 1 amended in 2009 to include a definition of "aggrieved persons."  The law now

defines "aggrieved persons" to include: "(a) Any person who claims to have been injured by any

unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code;

[or] (b) Any person who believes that the person will be injured by, any unlawful discriminatory

practice described in division (H) of section 4112.02 of the Revised Code that is about to occur."[1/]

O.R.C. § 4112.01(A)(23).  The law additionally defines "person" to include organizations, O.R.C.

§ 4112.01(A)(1), and provides that aggrieved persons, so-defined, may enforce § 4112.02(H) by

filing a civil action.  O.R.C. § 4112.051(A)(1).

       Because this statutory language, as amended, defines "aggrieved persons" almost identically

to the Fair Housing Act, the concerns expressed by the *Chance* court can no longer preclude

organizational standing under Ohio fair housing laws.  Ohio law now broadly defines "aggrieved

persons," includes organizations in this definition, and permits such aggrieved persons to enforce

provisions of the Fair Housing Law through private civil action—just as does the federal Fair

Housing Act.

       By their failure to discuss the current language of the very statute they argue precludes

standing, the Defendants have failed show that the Plaintiff, as a matter of law, lacks standing under

the Ohio Fair Housing Law.

*B. Statute of Limitations*

       The Defendants also argue that Housing Advocates failed to file its complaint within the

Ohio Fair Housing Law's one-year and the Fair Housing Act's two-year statutes of limitations.  The

---

[1/]Division (H) of section 4112.02 of the Ohio Revised Code defines "unlawful discriminatory practices" to include, in part, a "[failure] to design and construct covered multifamily dwellings for first occupancy on or after June 30, 1992" in accordance with certain delineated fair housing conditions.  O.R.C. § 4112.02(H)(22).  The Plaintiff brings its Ohio fair housing claims pursuant to this division.

Case No. 1:10-CV-0790
Gwin, J.

Ohio Fair Housing Law requires a plaintiff to file a complaint within one year following an alleged

unlawful discriminatory practice.  O.R.C. § 4112.051(A)(1).  The Fair Housing Act requires a

plaintiff to file a complaint "not later than 2 years after the occurrence or the termination of an

alleged discriminatory housing practice . . . whichever occurs last."  42 U.S.C. § 3613(a)(1)(A).

        Regarding the Plaintiff's claims under the Ohio Fair Housing Law, Ohio courts have turned

to federal Fair Housing Act case law for guidance in analyzing Ohio's fair housing provisions.  *See*

*Ohio Civil Rights Comm'n v. Triangle Real Estate Services*, No. 06AP-157, 2007 WL 1125842, at

*1, *5 (Ohio Ct. App. Apr. 17, 2007) (examination of analogous federal case law is appropriate

when interpreting Ohio Fair Housing Law) (citing *Kozma v. AEP Energy Services*, No. 04AP-643,

2005 WL 615649 (Ohio Ct. App. Mar. 17, 2005) and *Wooten v. City of Columbus*, 632 N.E.2d 605,

610 (Ohio Ct. App. 1993)).[2]  Therefore, the Court's analysis will focus on the statutory language of

and on case law interpreting the Fair Housing Act's statute of limitations.  The Court's findings

regarding the accrual of a claim under the Fair Housing Act's two-year limitations period will thus

apply with equal force to the Ohio Fair Housing Law's one-year statute of limitations.

        The Defendants say that in calculating the relevant statute of limitations period, the Court

should hold that the limitations period in design and construction cases runs from the date of the

development's completion.  To this end, the Defendants offer the issuance date of the last Certificate

of Occupancy—January 15, 2008—and argue that the Plaintiff failed to file its February 26, 2010

complaint within the proper period following this January 2008 date. [Doc. 27-2; Doc. 29-2.]

---

[2] The Defendants also substantively rely on *Triangle Real Estate* and *Ohio Civil Rights Comm'n v. Fairmark Development*, No. 08AP-250, 2008 WL 5197160 (Ohio Ct. App. Dec. 11, 2008) (relying on *Triangle Real Estate*) to argue that the statute of limitations in design and construction cases should run from issuance of the last certificate of occupancy under Ohio law.  However, the court in *Triangle Real Estate* declined to analyze the statute of limitations under an alleged policy or practice of noncompliant design and construction.  The court also based its holding on the factually dissimilar *Moeske v. Miller and Smith*, 202 F. Supp. 2d 492 (E.D. Va. 2002), in which the plaintiffs alleged fair housing violations based on a refusal to rent or sell an apartment to a single individual.

Case No. 1:10-CV-0790
Gwin, J.

Housing Advocates responds that Emerald Village's last Certificate of Occupancy, for a car port, was in fact issued on February 28, 2008. [Doc 34 at 12-13; Doc. 34-2.] Because the Fair Housing Act covers parking lots and other accessory structures, the Plaintiff says, the limitations period should only begin to run from this truly final Certificate of Occupancy.

Alternatively, Housing Advocates argues that this Court should apply the continuing violations doctrine in design and construction cases to hold that the limitations period does not begin to run until the fair housing violation is remedied.[3/]  The Plaintiff reasons that because the Fair Housing Act targets alleged discriminatory design and construction practice, the statute of limitations should not begin to run until the faulty design and construction is remedied and the discriminatory practice is thereby concluded. [Doc. 34.] Housing Advocates adds that this application of the continuing violations doctrine comports with the "broad remedial intent" of the Fair Housing Act as modified by the Fair Housing Amendments Act of 1988.  *See, e.g.*, *Havens*, 455 U.S. 363.

The Sixth Circuit has most recently analyzed the Fair Housing Act's statute of limitations in *Fair Housing Council v. Village of Olde St. Andrews*, No. 05-5862, 2006 WL 3724128, at *470, *474 (6th Cir. Dec. 15, 2006).  In *St. Andrews*, the plaintiff, a nonprofit fair housing organization, sued three multi-family housing developments, the real estate corporation that constructed those developments, and the developments' architect, for various noncompliant structures in each development.  The plaintiff brought its suit under the Fair Housing Act, alleging a failure to design and construct the developments in compliance with § 3604(f)(3)(C) of the Act.  The defendants

---

[3/]Housing Advocates additionally suggests that the statute of limitations should not begin to run until the fair housing violation is actually discovered or would have been apparent. [Doc. 34 at 26.] The Plaintiff argues that the statute of limitations should be tolled until Housing Advocates discovered the Emerald Village violations through testing.  For the same reasons that this Court declines to toll the statute of limitations until the violations are remedied—namely, that the text of the Fair Housing Act targets design and construction violations in the context of the sale or rental of noncompliant units—the Court finds this argument unconvincing.

Case No. 1:10-CV-0790
Gwin, J.

argued that the statute of limitations barred the plaintiff's complaint.  On appeal, the Sixth Circuit

held that the continuing violations doctrine applies, in a limited and case-specific fashion, to toll the

statute of limitations in cases alleging a policy or practice of designing and constructing

noncompliant units, until the sale of the last unit.  *Id.* at *481.

     For the reasons presented in *St. Andrews*, this Court declines to apply the continuing

violations doctrine to run the statute of limitations from the date the alleged housing violation is

remedied, as the relevant provisions of the Fair Housing Act targets discrimination in sale or rental,

rather than overall noncompliance in design and construction.  *See id.* at 480 ("In the context of the

construction and design of multifamily dwelling units that are inaccessible to disabled individuals,

the discriminatory act occurs during the sale or rental of that unit. Thus, once a unit has been sold

or rented, the discriminatory act is complete.")

     The Court finds the Defendants' argument, however, that the statute of limitations should

begin to run upon issuance of the last Certificate of Occupancy, similarly unavailing.  That argument

rests in large part on *Garcia v. Brockway*, 503 F.3d 1092 (9th Cir. 2007), *reh'g en banc* 526 F.3d

456 (9th Cir. 2008),[4] in which the Ninth Circuit held that the statute of limitations in Fair Housing

Act design and construction cases runs from the date of the last certificate of occupancy, which

marks the termination of the noncompliant dwelling's design and construction (and thus the fair

housing violation).  *See* 42 U.S.C. 3613(a)(1)(A) (statute of limitations triggered by "the occurrence

or the termination of an alleged discriminatory housing practice").  The court declined to apply the

---

    [4] The Defendants also heavily rest their argument on the federal district court decisions in *Moeske*, 202 F. Supp. 2d 492 (design and construction violation alleged in the sale or rental of a noncompliant apartment to a single individual) and *United States v. Taigen and Sons, Inc.*, 303 F. Supp. 2d 1129 (D. Idaho 2003) (statute of limitations analysis for fair housing claim brought by U.S. Attorney General), which employ reasoning similar to *Brockway* to find the statute of limitations runs from the end of the noncompliant building's construction.  The Court finds the facts and rationale of these cases similarly unpersuasive.

Case No. 1:10-CV-0790
Gwin, J.

continuing violations doctrine to toll the statute of limitations, finding that otherwise, the Act's "statute of limitations would provide little finality for developers . . . [leaving them] on the hook years after they cease having any association with a building[.]" *Brockway,* 503 F.3d at 1098.

This Court finds, rather, that the facts of the instant case warrant application of the *St. Andrews* rationale.  Though *St. Andrews* limited its holding to the facts of that case, this Court finds the facts of and reasoning in *St. Andrews*, though not binding, to be particularly instructive.  Here, as there, the Plaintiff organization brings its claims against the Defendants for their roles in the design and construction of noncompliant dwellings.  Through testing and inspection, Plaintiff Housing Advocates similarly located alleged fair housing violations both in individual units and in common spaces.  Though the *St. Andrews* plaintiff brought its discriminatory policy and practice claims against three housing developments, each of those developments contained several noncompliant dwelling units, as the Plaintiff alleges does Emerald Village.

Moreover, Plaintiff Housing Advocates brings its claims in part under 42 U.S.C. § 3604(f), which targets the *sale or rental* of noncompliant housing.  Sections 3604(f)(1) and (f)(2) further delineate causes of action available under § 3604, specifying that it shall be unlawful "[t]o discriminate in the sale or rental" of a dwelling against any buyer or renter because of handicap, 42 U.S.C. § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of handicap, 42 U.S.C. § 3604(f)(2).  Section 3604(f)(3) then defines discrimination "for the purposes of this subsection," to include a failure to *design and construct* multi-family dwellings to permit handicap accessibility for *first occupancy*.  42 U.S.C. § 3604(f)(3).  These provisions thus link the design and construction of noncompliant multi-family dwellings, such as Emerald Village, to a cause of action under the Act stemming from the sale or

-10-

Case No. 1:10-CV-0790
Gwin, J.

rental of such dwellings.

As with noncompliant units up for sale, noncompliant units for rent may remain un-let until after the statute of limitations has run.  Running the limitations period from the date the last certificate of occupancy issued would thus allow developers to escape liability whenever noncompliant units are first rented anytime after the limitations period had expired.  To permit such result would challenge the access to courts and private enforcement goals that Congress sought to facilitate through the Fair Housing Act, thereby ignoring the principle that courts should effect the "broad remedial intent of Congress embodied in the Act."  *Havens*, 455 U.S. at 380-81; *see also Brockway*, 503 F.3d at 1101-02 (Fisher, J., dissenting).

Finally, because § 3604(f)(3) defines discrimination as extending only to first occupancy, tolling the statute of limitations until the sale or initial rental of the final unit prevents the limitations period from being re-triggered each time a previously-rented unit is vacated and then re-let. Applying the continuing violations doctrine in this fashion, therefore, avoids permitting an enduring threat of litigation that the Defendants fear would render the statute of limitations meaningless. [Doc. 29-1 at 12.]

The Plaintiff alleges that the Defendants engaged in the practice of designing and building noncompliant units throughout the multi-family Emerald Village housing complex, units which were then made available to rent.  *See Fair Housing Council v. Village of Olde St. Andrews*, 250 F. Supp. 2d 706 (W.D. Ky. 2003) (finding challenge to the design and construction of multi-family housing for sale or rental to be a challenge to an unlawful fair housing practice), *aff'd in relevant part*, 2006 WL 3724128, *470.  Under the facts of the instant case, the continuing violations doctrine tolls the Fair Housing Act's statute of limitations until the initial rental of the final unit in Emerald Village.

-11-

Case No. 1:10-CV-0790
Gwin, J.

Because neither party has offered any evidence as to the date of the sale or rental of the last unit in Emerald Village, the Court cannot determine whether the Plaintiff timely brought its claim under either the Fair Housing Act or Ohio Fair Housing Law.  Accordingly, the Defendants have failed to show that there is no genuine issue of material fact as to the statute of limitations issue. Summary judgment on this issue is therefore inappropriate.

### IV. Conclusion

For the forgoing reasons, the Court **DENIES** the Defendants' motions for summary judgment.

IT IS SO ORDERED.

Dated: November 29, 2010                       s/            *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE